KENNETH COOPERSTEIN, Respondent, v PAN-OCEANIC MARINE, INC., et al., Defendants, and MUTUAL FEDERAL SAVINGS & LOAN ASSOCIATION, Appellant.

While Mutual did not sustain its burden of proof with respect to its allegation that New York is an inconvenient forum for the subject litigation (see, Islamic Republic v Pahlavi, 62 NY2d 474, cert denied 469 US 1108; Laurenzano v Goldman, 96 AD2d 852, 853), there is no basis upon which personal jurisdiction can be exercised over Mutual.

When determining whether a party transacts business in New York within the meaning of CPLR 302 (a) (1), the court must examine the party's activities within the forum to see if purposeful acts have been performed in the State (see, Roddy v Schmidt, 57 NY2d 979; Reiner & Co. v Schwartz, 41 NY2d 648, 653). The record establishes that the plaintiff, a resident of New York, contacted Mutual, a Virginia bank with no offices or representatives in New York, seeking a loan in order to purchase a yacht from the defendant Robert Pancoe, a resident of Florida and the president of the defendant Pan-Oceanic Marine, Inc. All negotiations were conducted by telephone, and the loan papers which were executed by the plaintiff in New York were mailed to the plaintiff from Virginia. A check representing the amount of the loan proceeds, which was made out to Pancoe and the plaintiff, was mailed to Pancoe in Florida for his indorsement and was subsequently sent to the plaintiff in New York. The plaintiff then commenced making payments on the loan. The instant action is not based on an alleged breach of the loan agreement. Instead, the plaintiff commenced this action when a dispute arose concerning certain alleged defects in workmanship which existed on the yacht. The complaint alleges that

Pancoe and Mutual were joint venturers in this transaction, and it is upon this basis that the plaintiff seeks relief against Mutual. While it has been recognized that many of today's business transactions are accomplished solely by mail and wire communications across State lines *(see, Burger King Corp. v Rudzewicz,* 471 US 462), the totality of Mutual's actions do not amount to a purposeful invocation of the benefits and protection of the laws of New York. Mutual did not solicit business in New York; it was, instead, contacted by the plaintiff. Moreover, it did not send the loan proceeds to New York *(cf. Krupnick v Danin,* 86 AD2d 623).

Nor did Mutual contract to supply goods or services within New York *(see,* CPLR 302 [a] [1]). While the 1979 amendment to CPLR 302 (a) (1), which permitted New York courts to exercise long-arm jurisdiction over any party which "contracts anywhere to supply goods or services in the state" (L 1979, ch 252), was proposed in order to extend New York long-arm jurisdiction to its constitutional limits *(see, Island Wholesale Wood Supplies v Blanchard Indus.,* 101 AD2d 878, 879), the loan proceeds in the case at bar were sent to Florida. Thus, while the loan was made to a New York resident, the proceeds were not supplied within New York, even though Mutual knew that some of the proceeds might find their way to this State. Moreover, the plaintiff is suing Mutual for acts not based upon the loan agreement, but merely incidental to the loan itself. Therefore, there is no basis for conferring jurisdiction over Mutual as the cause of action must arise out of the contractual relationship *(see, Etra v Matta,* 61 NY2d 455, 459).

Finally, whatever may be said about the sufficiency of the plaintiff's complaint, there is still no basis for exercising personal jurisdiction over Mutual pursuant to CPLR 302 (a) (3). In order to obtain jurisdiction over a nondomiciliary pursuant to CPLR 302 (a) (3), the plaintiff must show that the defendant committed a tort outside of the State, causing injury to the plaintiff in New York, that the defendant should have reasonably foreseen the act to have consequences in New York, and that the defendant derives substantial revenue from interstate or international commerce *(see,* CPLR 302 [a] [3] [ii]; *Fantis Foods v Standard Importing Co.,* 49 NY2d 317). While this provision of the long-arm statute applies to commercial torts *(see, Sybron Corp. v Wetzel,* 46 NY2d 197; *see also, Fantis Foods v Standard Importing Co., supra),* there must be a more direct injury within the State than the indirect financial loss resulting from the fact that the injured person resides or is domiciled here *(see, Fantis Foods v Stan-*

*dard Importing Co., supra,* p 326; *Bramwell v Tucker,* 107 AD2d 731, 732). Therefore, the plaintiff's allegation that he suffered pecuniary loss based upon Mutual's alleged fraud and misrepresentation, without more, is insufficient to sustain his burden of showing that the injury occurred in New York. Moreover, as previously noted, Mutual did not purposefully avail itself of the privilege of conducting activities within the forum State, thereby invoking the benefits and protection of its laws *(see, Martinez v American Std.,* 91 AD2d 652, 653, *affd* 60 NY2d 873, quoting from *Hanson v Denckla,* 357 US 235, 253, *reh denied* 358 US 858). Therefore, Mutual could not have foreseen any New York consequences from its actions, another prerequisite to obtaining jurisdiction under CPLR 302 (a) (3). For the foregoing reasons, Mutual's motion pursuant to CPLR 3211 (a) (8) to dismiss the complaint insofar as it is asserted against it is granted. Mollen, P. J., Mangano, Niehoff and Weinstein, JJ., concur.