**Milton C. STADT, as executor of the Estate of Janet Stadt, deceased, Plaintiff,**

v.

**The UNIVERSITY OF ROCHESTER, the Estate of Stafford L. Warren, deceased, Hymer Friedell, Christine Waterhouse, Robert E. Rowland, and the United States of America, Defendants.**

No. 95–CV–6281T.

United States District Court, W.D. New York.

April 15, 1996.

Stephen G. Schwarz, Faraci, Lange, Johns & Schwarz, Rochester, NY, for plaintiff.

David M. Bernick, Kevin T. Van Wart, Craig Knot, Kirkland & Ellis, Chicago, IL, Brian N. Zorn, David M. Lascell, Hallenbeck, Lascell & Pineo, Rochester, NY, for University of Rochester, Christine Waterhouse.

Anne VanGraafeiland, Asst. U.S. Atty., Rochester, NY, Richard Montague, Frank W. Hunger, Helene M. Goldberg, U.S. Department of Justice, Torts Branch, Civil Division, Washington, DC, for The Estate of Stafford L. Warren, Hymer Friedell, U.S.

TELESCA, District Judge.

## INTRODUCTION

Plaintiff Milton C. Stadt, as executor of the Estate of his mother Janet Stadt, ("Stadt"), brings this action pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 et. seq., claiming that the defendants violated decedent's Fifth Amendment right to life, liberty, privacy, and bodily integrity. Plaintiff also asserts state law claims of fraud, conspiracy, and medical malpractice. Defendant Hymer L. Friedell ("Friedell") and the Estate of Stafford L. Warren ("Warren") move pursuant to Rule 12(b) of the Federal Rules of Civil Procedure to dismiss all claims against them on grounds that: 1) they are absolutely immune from suit on plaintiff's state law claims, 2) the court lacks personal jurisdiction over them, 3) the defendants are entitled to qualified immunity from suit on plaintiff's federal claim, and (4) the Estate of Warren lacks the capacity to be sued. In the alterna-

tive, defendants Friedell and Warren move for summary judgment.

Counsel for both the plaintiff and the Estate of Stafford Warren stipulated to dismissal of plaintiff's claims against Dr. Warren in his individual capacity.[1] The parties also stipulated to dismissal of plaintiff's state law causes of action for conspiracy, fraud, and medical malpractice against both Friedell and Warren. Thus, the only issue remaining is whether or not the constitutional claims against defendant Friedell should be dismissed. For the reasons set forth below, Friedell's motion to dismiss plaintiff's constitutional claim is denied.

## BACKGROUND

In 1945, as part of the United States Government's effort to develop nuclear weapons, a number of medical officers working in conjunction with the Army Corp of Engineers engaged in research concerning the effects exposure to radioactive substances had on the human body. As part of this study, Dr. Stafford L. Warren, the Chief Medical Officer of the United States Army Corp of Engineer's "Manhattan Engineer District," and Dr. Hymer L. Friedell, Warren's deputy, allegedly ordered that human subjects be injected with plutonium so that the effects of the radiation on them could be evaluated.

As part of this study, plaintiff's decedent Janet Stadt, who was 41 at the time, was admitted to the University of Rochester Hospital in February of 1946. Stadt was allegedly told that she was being treated for scleroderma, a serious, but not life-threatening disease. On March 9, 1946, after spending approximately 20 days in the hospital, Stadt was allegedly injected with 6.5 micrograms of plutonium and studied for 65 days thereafter while remaining as a patient in the hospital. Plaintiff alleges that Stadt never gave her doctors permission to inject her with plutonium. On May 13, 1946, plaintiff was discharged, and throughout 1946 and 1947, she was subjected to additional blood, urine, and feces testing. Finally, Stadt underwent additional testing in 1972 by University of Rochester researcher Dr. Christine

Waterhouse, again, without being told that she was part of an experiment to evaluate the effects of plutonium on her body. Plaintiff claims that as a result of the plutonium injections, Stadt suffered intense pain caused by severe bone degeneration and laryngeal cancer. Stadt passed away on November 22, 1975.

## DISCUSSION

### I. Defendant's Motion to Dismiss.

■ Defendant Friedell moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss plaintiff's federal claim against him on grounds that he is not subject to personal jurisdiction by this court, and is entitled to qualified immunity. A Rule 12(b)(6) motion may be granted only where "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir.1991) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)). For the reasons set forth below, I hereby deny defendant Friedell's motion to dismiss plaintiff's federal claim.

### II. Plaintiff's Federal Claim.

Plaintiff claims that Friedell violated Stadt's Fifth Amendment right to life, liberty, privacy and "bodily integrity" by injecting her with plutonium without her consent. Friedell argues, however, that he may not be held liable to the plaintiff on grounds that this court does not have jurisdiction over him, or in the alternative, that he is entitled to qualified immunity from suit.

### A. The Court has Personal Jurisdiction over Defendant Friedell.

Defendant Friedell claims that this court lacks personal jurisdiction over him because he has not been a resident of New York State since 1940, and further because he did not engage in any tortious acts in New York. Plaintiff argues in response that agents of Friedell committed tortious acts in New

---

1. Attorney Kevin T. VanWart of the law firm Kirkland & Ellis appeared specially for the University of Rochester, but the University did not take part in the argument.

York, and therefore he is subject to the court's jurisdiction.

Whether or not a district court has personal jurisdiction over a defendant domiciled outside the state in which the court sits is determined by the law of the forum state, as well as the Due Process Clause of the Fourteenth Amendment. *See* Fed.R.Civ.P. 4(1). New York's long arm statute, codified at section 302 of the New York Civil Practice Law and Rules provides in relevant part that personal jurisdiction over a non-domiciliary may be obtained where a defendant, or his agent, "commits a tortious act within the state ..." N.Y.Civ.Prac.L. & R. 302 (McKinney 1990). Plaintiff alleges that the medical personnel who injected Stadt with plutonium and studied her thereafter were agents of the defendant, and therefore the defendant is subject to personal jurisdiction under the long-arm statute. The defendant insists, however, that the alleged relationship does not satisfy agency requirements, and that in any event, the medical personnel at the University of Rochester, (a government contractor), were agents of the United States, and not of Friedell.

Under New York law, the plaintiff is not required to demonstrate that a formal agency relationship existed between the defendants and those who committed the tortious acts complained of. *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195, 522 N.E.2d 40 (1988). An agency relationship may be found where a party is engaged "in purposeful activities in this State in relation to his transaction for the benefit of and with the knowledge and consent of the [principle] ... and that the [principle] ... exercised some control over [the party] ... in the matter." *Kreutter*, 71 N.Y.2d at 467, 527 N.Y.S.2d 195, 522 N.E.2d 40. In the instant case, defendants Warren and Friedell directed that the plutonium experiments be carried out in New York State, and that personnel from the University of Rochester would conduct the experiments. While it is not clear from the papers who specifically injected Stadt with the plutonium, plaintiff alleges, and defendants do not deny, that the person administering the plutonium was acting pursuant to directions given by Warren and Friedell. I find that participation in these experiments by personnel located in New York constitutes "purposeful activity" carried out on behalf of the defendant. Thus, these personnel may be considered agents of the defendant for purposes of plaintiff's claims, and therefore, personal jurisdiction by this court over Friedell is appropriate pursuant to New York's long arm statute.

Nor is personal jurisdiction over the defendants prohibited by the Constitution. The Due Process Clause of the Fourteenth Amendment has been interpreted as limiting a state court's exercise of personal jurisdiction over a non-domiciliary defendant to instances where the defendant has established "minimum contacts" with the foreign state such that he should "reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). The plaintiff has sufficiently alleged the existence of such minimum contacts. According to a U.S. Department of Energy report, both Warren and Friedell planned the research program that was to take place at the University of Rochester. See Exhibit D of Plaintiff Attorney's Affidavit in Opposition to Defendants' Motion to Dismiss. Additionally, the Manhattan District maintained offices in New York State, and as counsel for the defendant stated at the hearing, Friedell made numerous trips to New York in furtherance of Manhattan District business. The purpose of many of these visits was to plan and carry out scientific experiments on human beings at the University of Rochester. These were not insignificant or casual contacts. These contacts were considered important by the participants, and involving matters of national security. Indeed, the contacts were so important that the defendants and the government felt that neither the public nor Janet Stadt could be told of the nature of these contacts. Thus, I find that the defendant's contacts with New York State were significant, and that they satisfy the constitutional requirements for maintaining personal jurisdiction over this defendant.

B. *The Defendant is not Entitled to Qualified Immunity.*

 Defendant argues that since he was a government employee being sued in his individual capacity for his individual acts, he is therefore entitled to qualified immunity from suit by the plaintiff. Ordinarily, government officials sued in their individual capacities are' entitled to qualified immunity from suit for damages so long as their actions do not violate "clearly established constitutional or statutory rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Defendant argues that at the time Stadt was injected with plutonium without her consent in 1946, there was no clearly established right to be free from medical experimentation, claiming that the right to refuse medical treatment has only recently been recognized as a "clearly established constitutional right." *See e.g., Cruzan v. Director, Missouri Dept. of Health,* 497 U.S. 261, 110 S.Ct. 2841, 111 L.Ed.2d 224 (1990).

 But this case does not involve the right to refuse medical treatment, but instead, the right to be free from non-consensual experimentation on one's body—the right to bodily integrity—a right which has been recognized throughout this nation's history. See *Albright v. Oliver,* 510 U.S. 266, ——, 114 S.Ct. 807, 812, 127 L.Ed.2d 114 (1994) (finding that "the protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity.") (citations omitted); *Schmerber v. California,* 384 U.S. 757, 772, 86 S.Ct. 1826, 1836, 16 L.Ed.2d 908 (1966) (stating that "[t]he integrity of an individual's person is a cherished value of our society."); *Skinner v. State of Oklahoma ex rel. Williamson,* 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655 (1942) (holding that sterilization performed without consent deprived the individual of a "basic liberty."); *Union Pacific Railroad Co. v. Botsford,* 141 U.S. 250, 251, 11 S.Ct. 1000, 1001, 35 L.Ed. 734 (1891) (finding that "no right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law."). *See also* Morris L. Hawk, Comment, *The "Kingdom of Ends": In re Cincinnati Radiation Litigation and the Right to Bodily Integrity,* 45 Case W.Res.L.Rev. 977, 991–992 (suggesting that it was the intent of the framers of the Constitution to protect the right of bodily integrity). I find that under the plain language of the Fifth Amendment to the Constitution, the plaintiff had a clearly established right in 1946 to be free from being injected with plutonium by the government without her consent. The defendant, therefore, is not entitled to the defense of qualified immunity.

This same result was reached in a strikingly similar case, *In re Cincinnati Radiation Litigation,* 874 F.Supp. 796 (S.D.Ohio 1995) There, the Department of Defense conducted experiments on approximately 88 cancer patients between 1960 and 1972, for the purpose of determining, *inter alia,* the amount of radiation that could be withstood by a soldier without significant loss of ability. In holding that the defendants seeking qualified immunity were not entitled to the defense, Judge Beckwith concluded that:

> [t]he conduct attributed to the individual ... [d]efendants ... strikes at the very core of the Constitution. Even absent the abundant case law that has developed on this point since the passage of the Bill of Rights, the Court would not hesitate to declare that a reasonable government official must have known that by instigating and participating in the experimental administration of high doses of radiation on unwitting subjects, he would have been acting in violation of those rights. Simply put, the legal tradition of this country and the plain language of the Constitution must lead a reasonable person to the conclusion that government officials may not arbitrarily deprive unwitting citizens of their liberty and their lives.

*In re Cincinnati Radiation Litigation,* 874 F.Supp. at 815. I agree. The Constitution, and more specifically, the Due Process Clause of the Fifth Amendment clearly established a right to be free from non-consensual, governmental experimentation on one's

body—a right which had been in existence well before 1946. Therefore, without passing on the merits of plaintiff's claims, I hold simply that defendant Friedell must stand alongside the other defendants and defend himself against the plaintiff's charges.

## CONCLUSION

Pursuant to the stipulation of the parties, all claims against the Estate of Dr. Warren are dismissed without prejudice, and the state law claims of conspiracy, fraud, and medical malpractice against Friedell are converted into an action against the United States, and are dismissed as to Friedell with prejudice. Defendant Friedell's motion to dismiss the plaintiff's federal claims is denied, and plaintiff may pursue those federal claims against the defendant at trial.

ALL OF THE ABOVE IS SO ORDERED.