**WORLDWIDE FUTGOL ASSOCIATES, INC., Plaintiff,**

v.

**EVENT ENTERTAINMENT, INC., Defendant.**

**No. CV 96-5612 (RJD).**

United States District Court, E.D. New York.

Nov. 10, 1997.

David G. Lubell, Tanner Propp, LLP, New York City, for Plaintiff.

Jeffrey L. Zivyak, Zivyak Klein & Liss, New York City, for Defendant.

## MEMORANDUM & ORDER

DEARIE, District Judge.

This is a diversity action based on a contract (the "Agreement") between Worldwide Futgol Associates, Inc. ("WFA"), a licensor and distributor of United States television rights to international soccer matches, and Event Entertainment, Inc. ("Event"), whereby Event purchased the rights to certain soccer matches. Event has moved to dismiss the complaint, pursuant to Federal Rule of Civil Procedure 12(b)(2), on the ground that it is not subject to the personal jurisdiction of the Court. Alternatively, Event moves for a transfer of venue to the Central District of California pursuant to 28 U.S.C. § 1404(a). For the reasons stated below, the motion to dismiss is granted and the action is transferred to the Central District of California.

*Background*

The Agreement is a one-page memorandum executed by Julio Vanegas, WFA's General Manager, and Rick Kulis, Event's President. It provides for Event to pay $360,000 for the United States ("except California") closed circuit television rights to three international soccer matches: an October 16, 1996 match between Mexico and Jamaica; an October 30, 1996 match between Mexico and Honduras (collectively, the "Matches"). The sale price was to be paid in installments of $120,000, due October 12, 1996, and $240,000, due October 17, 1996. Payment of the second installment was conditioned on Mexico winning the October 16, 1996 Match with Jamaica. WFA claims that Event broadcast the first Match but failed to make either payment. Event claims that WFA failed to provide promised customers for the broadcasts, cut off the satellite feed for the October 16 Match, and withheld certain customer

proceeds when Event broadcast the Match through an alternate feed.

Event is a California corporation with its principal place of business in California. WFA is a New York corporation with its principal place of business in New York. Event is in the business of providing broadcasts of limited access sporting events. After acquiring the rights to a particular broadcast, Event accepts orders from customers—sports bars, restaurants and hotels—for the broadcast. Upon receiving payment from a customer, Event directs its subcontractor, which is located in Denver, Colorado, to address the satellite signal of the event, in unencrypted form, to the customer's satellite dish. Each satellite dish bears a unique addressable code number which allows Event's subcontractor to provide unencrypted signals to individual customers.

Prior to entering the Agreement, Event, through a joint venture with another entity, purchased the rights to televise the Matches in California. According to affidavits submitted on WFA's behalf, Event telephoned Ricky Schanks, an independent broker in the field of international soccer, shortly before the first Match to express its interest in obtaining broader rights to the Matches. This and subsequent calls were made by Event representatives in California to Schanks' home in New York.[1] Schanks put Event in contact with WFA, which owned the television rights to the Matches. The parties negotiated the Agreement in a series of bicoastal telephone calls. WFA faxed the Agreement to Event in California for signature and return fax. Event then contracted with numerous customers, a number of which may have been in New York, to provide access to the October 16 Mexico–Jamaica Match.

*Discussion*

■ The party seeking to invoke the Court's jurisdiction has the burden of establishing personal jurisdiction over a defendant. *See Falik v. Smith,* 884 F.Supp. 862,

864 (S.D.N.Y.1995) (Carter, J.). For purposes of this motion, the plaintiff need only make a *prima facie* showing of jurisdiction, and all factual matters are to be viewed in the light most favorable to the plaintiff. *PDK Labs, Inc. v. Friedlander,* 103 F.3d 1105, 1108 (2d Cir.1997); *Welinsky v. Resort of the World D.N.V.,* 839 F.2d 928, 930 (2d Cir.1988); *Falik,* 884 F.Supp. at 864.[2]

■ New York law governs the issue of personal jurisdiction in this diversity action. *See CutCo Indus., Inc. v. Naughton,* 806 F.2d 361, 365 (2d Cir.1986) (citing *Arrowsmith v. United Press Int'l,* 320 F.2d 219, 223 (2d Cir.1963)); *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985); *Wilhelmshaven Acquisition Corp. v. Asher,* 810 F.Supp. 108, 111 (S.D.N.Y.1993) (Cedarbaum, J.). New York's long arm statute provides, in relevant part:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary ... who in person or through an agent:
>
> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state ...

N.Y.C.P.L.R. § 302(a)(1) (McKinney 1990). Additionally, a foreign corporation "doing business" in New York is "present" in the state, and therefore subject to personal jurisdiction here pursuant to C.P.L.R. § 301, regardless of whether the cause of action relates to the corporation's New York contacts. *See Hoffritz for Cutlery,* 763 F.2d at 57–58.

1. *Transacting Business in New York*

■ A court may exercise jurisdiction over a defendant under C.P.L.R. § 302(a)(1) if (a) the defendant "transacts business" within the state and (b) the cause of action arises from that transaction of business. *Agency Rent A Car System, Inc. v. Grand Rent A Car Corp.,* 98 F.3d 25, 29 (2d Cir. 1996). Whether a defendant has transacted business in the state depends on consider-

---

1. Event, on the other hand, claims that Schanks initiated these calls and represented he was calling from an office in New Jersey.

2. However, if the Court has held an evidentiary hearing, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *CutCo Indus., Inc. v. Naughton,* 806 F.2d 361, 364–65 (2d Cir.1986).

ation of numerous factors, such as whether (a) the defendant has an ongoing relationship with a New York corporation; (b) the contract was negotiated or executed in New York; (c) the contract contains a New York choice-of-law clause; and (d) payments were to be made into New York or performance was to be supervised from New York. *Id.* The ultimate determination should be based on the totality of the circumstances. *Id.*

New York courts have held that conducting contractual negotiations by phone, fax or mail with a party in New York does not constitute the transaction of business within the state. *See Glassman v. Hyder*, 23 N.Y.2d 354, 361–63, 244 N.E.2d 259, 262–63, 296 N.Y.S.2d 783, 788–89 (1968); *Success Marketing Electronics, Inc. v. Titan Security, Inc.*, 204 A.D.2d 711, 612 N.Y.S.2d 451 (2d Dep't 1994); *Spectra Prods., Inc. v. Indian River Citrus Specialties, Inc.*, 144 A.D.2d 832, 833–34, 534 N.Y.S.2d 570, 572 (3d Dep't 1988); *Paradise Prods. Corp. v. Allmark Equipment Co., Inc.*, 138 A.D.2d 470, 471–72, 526 N.Y.S.2d 119, 121 (2d Dep't 1988) ("[i]t has been held repeatedly that interstate negotiations by telephone are not contacts that subject a defendant to jurisdiction at the instance of the New York party receiving them"); *Cooperstein v. Pan–Oceanic Marine, Inc.*, 124 A.D.2d 632, 633, 507 N.Y.S.2d 893, 894 (2d Dep't 1986), *leave to appeal denied*, 69 N.Y.2d 611, 511 N.E.2d 84, 517 N.Y.S.2d 1025 (1987); *J.E.T. Advertising Assocs., Inc. v. Lawn King, Inc.*, 84 A.D.2d 744, 745, 443 N.Y.S.2d 745, 747 (2d Dep't 1981); Vincent C. Alexander, 1996 Supplemental Practice Commentary to § 302, at C302:10 ("courts seem generally loath to uphold jurisdiction under the 'transaction in New York' prong of CPLR 302(a)(1) if the contract at issue was negotiated solely by mail, telephone and fax without any New York presence by the defendant").

■ Here, Event's only direct contacts with New York relating directly to the Agreement were its telephone and fax contact with WFA and Schanks. Although telephone contact can, in rare cases, constitute "transacting business" in the state if the defendant actively "projects" itself into New York events, such as by actively participating in a New York art auction by telephone, *Parke–Bernet Galleries, Inc. v. Franklyn*, 26 N.Y.2d 13, 256 N.E.2d 506, 308 N.Y.S.2d 337 (1970), such is not the case here. Furthermore, a plaintiff's New York activities relating to the contract cannot be imputed to the defendant for jurisdictional purposes. *See, e.g., J.E.T. Advertising*, 84 A.D.2d at 745, 443 N.Y.S.2d at 747.

■ Nor has Event engaged in the type of purposeful activity connected with New York that is constitutionally required to confer jurisdiction in New York. *See Schultz v. Hyman*, 201 A.D.2d 956, 607 N.Y.S.2d 824 (4th Dep't 1994) (exercise of personal jurisdiction over nonresident defendant must comport not only with New York law but with judicial interpretations of Due Process Clause). Pursuant to the Due Process Clause, a nonresident defendant must have sufficient minimum contacts with the forum state such that it has purposefully availed itself of the benefits and protections of the laws of that state and may reasonably expect to be haled into court there to defend its actions. *See International Shoe Co. v. State of Washington*, 326 U.S. 310, 319, 66 S.Ct. 154, 159–60, 90 L.Ed. 95 (1958); *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 ("it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws"), *reh'g denied*, 358 U.S. 858, 79 S.Ct. 10, 3 L.Ed.2d 92 (1958); *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295, 100 S.Ct. 559, 566 (1980); *see Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 112, 107 S.Ct. 1026, 1032, 94 L.Ed.2d 92 (1987) ("[t]he substantial connection between the defendant and the forum State necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the forum State.*") (plurality opinion) (internal quotation and citations omitted) (emphasis in original).

■ The question remains, however, whether Schanks' New York activities may be imputed to Event for jurisdictional purposes. *See* N.Y.C.P.L.R. § 302(a). To es-

tablish jurisdiction through the acts of an agent, a plaintiff need not show that a formal agency relationship existed under principles of agency law. *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467, 522 N.E.2d 40, 44, 527 N.Y.S.2d 195, 199 (1988); *see CutCo*, 806 F.2d at 366. Rather, plaintiff must only show that the putative agent engaged in purposeful activities in New York in relation to the transaction, that those activities were performed for the benefit and with the knowledge and consent of the defendant, and that the defendant exercised some control over the agent in the matter. *Kreutter*, 71 N.Y.2d at 467, 522 N.E.2d at 44, 527 N.Y.S.2d at 199.

■ The parties sharply disagree on the role of Ricky Schanks in the formation of the Agreement. Event asserts that Schanks contacted it from New Jersey, seeking to broker a deal for the rights to the Matches. Schanks, on WFA's behalf, asserts that Event contacted him in New York and requested that he put Event in contact with the owner of the rights to the Matches. Neither party indicates whether it paid Mr. Schanks a commission or broker's fee,[3] and WFA does not explicitly assert that Schanks was Event's agent. Schanks asserts that he had "numerous telephone conversations with Event from [his] home in New York," relating not only to the Agreement but to Event's subsequent attempts to procure customers for the closed circuit telecasts. Schanks affid. ¶ 6. Accepting WFA's version of events, it appears that Schanks, in New York, contacted WFA on Event's behalf and put the parties in contact with each other to negotiate the Agreement directly. *See* Schanks affid. ¶¶ 4–5.

Thus, for purposes of this motion, it is clear that Schanks engaged in purposeful activities in New York in relation to the transaction, and that those activities benefitted and were undertaken with the knowledge and consent of Event. It is unclear, however, whether Event exercised control over Schanks' conduct in this matter, an element which is critical to a finding of agency for

Section 302(a) purposes. *See CutCo*, 806 F.2d at 366.

The facts before the Court at this time strongly suggest that Schanks acted as an independent broker. Furthermore, relevant cases in which jurisdiction was predicated on the acts of an agent have generally involved much greater degrees of control by the defendant than Event is alleged to have exercised here. For example, in *Kreutter*, one of the defendants was the principal of a Texas corporation which, pursuant to a joint venture agreement with a New York-based company, commissioned the latter to market investment opportunities in the defendant's Texas oil producing operations. The defendant's corporation and the New York company claimed each other's addresses as their own and shared the same officers and directors. The action arose from plaintiff's investment agreement, with the New York-based company, and the latter's transaction of business in New York was imputed to the defendant. 71 N.Y.2d at 463–64, 522 N.E.2d at 41–42, 527 N.Y.S.2d at 196–97.

In *CutCo*, the Second Circuit held that where the defendant and his putative agent exercised joint control over a business venture, there is sufficient control to support a *prima facie* case of agency for jurisdictional purposes. 806 F.2d at 365–66. In *Stadt v. University of Rochester*, 921 F.Supp. 1023 (W.D.N.Y.1996), the putative agents performed the allegedly tortious acts which formed the basis of the action at the specific direction of the moving defendant. In *Holmes v. First Meridian Planning Corp.*, 155 A.D.2d 813, 547 N.Y.S.2d 928 (3d Dep't 1989), the putative agent was commissioned to procure customers in New York for the moving defendant, a Florida mortgage lender. In light of these precedents, the Court finds that WFA has failed to make a *prima facie* showing that Schanks served as Event's agent.

However, even if the Court found, for jurisdictional purposes, that Schanks was Event's agent, his alleged activities would be insufficient to confer jurisdiction over Event.

---

**3.** Schanks asserts that he did not solicit or receive any payment from WFA in this matter.

Schanks affid. ¶ 8.

With respect to the Agreement, WFA has not alleged any New York conduct by Schanks other than calling WFA from New York to inform WFA that Event was interested in purchasing the rights to the Matches. WFA does not assert that Schanks made more than a single call to WFA on Event's behalf. Thus, assuming that Schanks was Event's agent, it is as if Event contacted WFA from New York (through Schanks) to initiate the negotiations, then conducted the bulk of the negotiations and executed the Agreement from California. New York courts have held that even multiple meetings in New York, which were not for the purpose of executing or performing the contract at issue, were insufficient to confer jurisdiction under Section 302(a)(1) on an out-of-state defendant. *See McKee Elec. Co. v. Rauland–Borg Corp.*, 20 N.Y.2d 377, 229 N.E.2d 604, 283 N.Y.S.2d 34 (no jurisdiction over Illinois defendant whose representatives made "a few" visits to plaintiff in New York in attempt to reconcile disagreements over disputed contract); Joseph M. McLaughlin, Practice Commentary to C.P.L.R. § 302, at C302:10 ("physical presence ... is [not] a talisman which will convert all affairs of business into a New York transaction").

Thus, the limited relevant New York acts by Schanks (again, no more than a single telephone call to WFA from New York is alleged) would be deemed insufficient, under New York law, to confer jurisdiction over Event, even if the Court could find he was Event's agent. *See Ford v. Unity Hosp.*, 32 N.Y.2d 464, 299 N.E.2d 659, 346 N.Y.S.2d 238 (1973) (agent's unauthorized issuance of binder in New York insufficient to confer jurisdiction over insurer). *Cf. Murray, Hollander, Sullivan & Bass v. HEM Research, Inc.*, 111 A.D.2d 63, 489 N.Y.S.2d 187 (1st Dep't 1985) (jurisdiction found where defendant conducted at least seven meetings in New York and negotiated and signed note in New York).

*George Reiner & Co., Inc. v. Schwartz*, 41 N.Y.2d 648, 363 N.E.2d 551, 394 N.Y.S.2d 844 (1977), wherein jurisdiction was founded on a single visit to New York in which defendant interviewed, negotiated and contracted for a position as plaintiff's sales representative, is distinguishable because the contract in that case was formed and executed in New York. Although execution of a contract in New York does not necessarily constitute the "transaction of business" in New York, *Standard Wine & Liquor Co., Inc. v. Bombay Spirits Co., Ltd.*, 20 N.Y.2d 13, 17, 228 N.E.2d 367, 369, 281 N.Y.S.2d 299, 301–02 (1967), some courts have found this factor critical to the exercise of jurisdiction. *See Gilbert v. Wilson*, 821 F.Supp. 857, 859–60 (N.D.N.Y.1993) (Scullin, J.); *New Generation Foods, Inc. v. Spicer's Int'l*, 669 F.Supp. 599, 600 (S.D.N.Y.1987) (Kram, J.) ("New York courts have held that 'where a contract is made in this state and a cause of action arises out of such contract, the consummation of the contract in New York constitutes the transaction of business or minimum contacts necessary to invoke personal jurisdiction.'") (quoting *Iroquois Gas Corp. v. Collins*, 42 Misc.2d 632, 634–635, 248 N.Y.S.2d 494, 497 (Sup.Ct. Erie County 1964) (Jasen, J.), *aff'd*, 23 A.D.2d 823, 258 N.Y.S.2d 376 (4th Dep't 1965)).

WFA implicitly makes the further claim that Event should be amenable to this action because Event (or Schanks, acting on Event's behalf) may have "transacted business" in New York by attempting to sell the broadcasts to New York subscribers. As stated above, where jurisdiction is based on the transaction of business in New York, the claim must "arise from" the particular New York transaction of business. *Agency Rent A Car*, 98 F.3d at 29 (citing *Hoffritz for Cutlery*, 763 F.2d at 58–59). A claim "arises from" the New York business transaction if there is a "substantial nexus" between the business transacted and the cause of action. *Agency Rent A Car*, 98 F.3d at 31; *McGowan v. Smith*, 52 N.Y.2d 268, 272, 419 N.E.2d 321, 323, 437 N.Y.S.2d 643, 645 (1981). WFA has not alleged any specific secondary activities by Event which would constitute the transaction of business in New York; it merely surmises that such activities may have taken place. Unsupported allegations such as these are insufficient to confer personal jurisdiction. *See Falik*, 884 F.Supp. at 865. Furthermore, even if Event engaged in substantial New York activities to market the

Matches here, this action does not arise from those activities.

Numerous courts have dismissed actions where personal jurisdiction is premised on a defendant's New York transactions that are not directly related to the cause of action. In *Beacon Enterps., Inc. v. Menzies*, 715 F.2d 757 (2d Cir.1983), plaintiff sought a declaratory judgment that certain of its products did not infringe defendant's trademarks. The action followed a letter sent by the California-based defendant to the plaintiff in New York threatening legal action if plaintiff did not cease and desist from marketing the allegedly infringing products. The court accepted that defendant shipped "an unspeci-. fied number" of the goods in question to New York, *id.* at 763, but found no "sufficient nexus" between those shipments and the cause of action. *Id.* at 764. According to the court: "[plaintiff] does not allege that [defendant's] shipments of goods into New York are in any way injurious to it. In fact, [defendant's] shipments of goods into New York are irrelevant to [plaintiff's] action and [plaintiff's] cause of action would exist regardless of whether [defendant's] products were sent to New York." *Id.* at 765. The same can be said here: Event's hypothetical sales of the broadcasts in New York are irrelevant to WFA's breach of contract action, which would exist regardless of whether Event marketed the broadcasts here, elsewhere or not at all.

Similarly, in *Jolivet v. Crocker*, 859 F.Supp. 62 (E.D.N.Y.1994) (Trager, J.), plaintiff was a New York employee of a pension fund involved in certain real estate dealings with a Florida management firm. Plaintiff was fired after the firm's principal sent a letter to plaintiff's employer alleging that plaintiff had made anti-Semitic statements to an employee of the firm. Plaintiff sued for defamation, and the court granted defendant's motion to dismiss on personal jurisdiction grounds. The court found that although the management firm had transacted business in New York with regard to its real estate dealings with plaintiff's employer, defendant's New York activities were not substantially related to the allegedly defamatory letter. *Cf. McGowan v. Smith*, 52

N.Y.2d 268, 419 N.E.2d 321, 437 N.Y.S.2d 643 (1981) (defendant's visits to New York to conduct marketing research not sufficiently related to sale to New York plaintiff of goods from which action arose).

Other courts, finding jurisdiction, have specifically relied on the direct connection between a defendant's New York transactions and the plaintiff's claim. In *Hoffritz for Cutlery*, a franchisor sued a Georgia franchisee, alleging that the structure of the franchisee's Georgia store lease violated the parties' franchise agreement. The district court found that the franchisee had transacted business in New York with regard to the original formation of the franchise agreement, but that it had no personal jurisdiction over the franchisee because the franchisee's New York contacts were not substantially related to the Georgia lease. The Second Circuit reversed, reasoning that while "plaintiffs' cause of action stems from allegedly improper conduct concerning defendants' lease for a store in Georgia, it must not be overlooked that the action arises directly from alleged breaches of the franchise agreement, and not of the lease." 763 F.2d at 59.

In *Agency Rent A Car*, a New York-based car rental franchisor sought a declaratory judgment that its acquisition of another rental car business did not violate exclusivity provisions in certain agreements with out-of-state franchisees. In finding jurisdiction over the franchisees (which, the court found, were "transacting business" in New York), the Second Circuit concluded that there was a "substantial nexus" between the action and the franchise agreements. There, too, the action arose from the alleged breach of the franchise agreements. This action, however, arises from the parties' licensing agreement, not plaintiff's hypothetical New York contacts relating to secondary sales of the Matches.

*Ligi v. Regnery Gateway, Inc.*, 689 F.Supp. 159 (E.D.N.Y.1988) (Costantino, J.), cited by WFA, is distinguishable. The licensing agreement at issue there, whereby the New York plaintiff purchased Romanian language rights to a book published by the Illinois defendant, arose from the defendant's agreement to distribute the book, through a

third party, in New York. The Court implicitly found that, through its agreement with the New York distributor, the defendant had transacted business in New York. Because the cause of action bore a "substantial relationship" to that transaction, jurisdiction existed. There, plaintiff's claim was dependent on the existence of defendant's New York contacts and distribution of the book in New York. Here, as stated above, WFA's claim is independent of any New York transactions Event may hypothetically have engaged in subsequent to the Agreement. WFA has failed to make out a *prima facie* case that its claim arises from any New York transactions of business by Event.

## 2. *Contracting to Provide Goods or Services in New York*

■ Under Section 302(a)(1), Event may be subject to the Court's jurisdiction if it "contract[ed] anywhere to supply goods or services in New York," so long as the action arises from that contract. The Agreement authorized Event to provide access to the Matches in forty-nine states, including New York. It certainly contemplated that Event would provide such access, possibly in New York, and Event does not deny that some of its customers for the October 16 Match were in New York. The contract which is the subject of this action, however, was not one for the provision of goods or services in New York. To the extent Event may have provided New York access to the October 16 Match, that service was pursuant to secondary contracts with its customers, and not the Agreement. The Agreement did not require Event to distribute the broadcasts at all, and certainly did not require it to do anything in New York.

New York cases support the conclusion that jurisdiction under the "contracts anywhere" prong of Section 302(a)(1) should not be based on secondary contracts potentially involving the provision of services in New York. In *J.E.T. Advertising*, the plaintiff had sued a New Jersey franchisor of lawn care dealerships for breach of an agreement to advertise the franchisor's services. The court held that "[a]ny services or goods which defendant supplies to its New York

franchisees are ineffective to sustain jurisdiction, since plaintiff's action does not arise out of these franchise agreements." 84 A.D.2d at 745, 443 N.Y.S.2d at 747.

In *Spectra Products*, the New York plaintiff had agreed to insert advertisements for the Florida defendant's citrus products in certain bank mailings. Some of defendant's customers were in New York. When plaintiff sued for breach of the parties' agreement, the court ruled that jurisdiction could not be sustained by defendant's sales to New York customers "since plaintiff's action does not arise out of these sales." 144 A.D.2d at 834, 534 N.Y.S.2d at 572.

In *Cooperstein*, the New York plaintiff had borrowed money from a Virginia bank to buy a yacht. Plaintiff sued the seller and the bank, alleging that the two effectively were joint venturers in the sale, on the ground that the yacht was defective. The court found no jurisdiction over the bank, in part because the suit was grounded in "acts not based upon the loan agreement, but merely incidental to the loan itself." 124 A.D.2d at 633, 507 N.Y.S.2d at 895.

## 3. *"Doing Business" in New York*

WFA also contends that jurisdiction is appropriate under Section 301 of the C.P.L.R., which allows for jurisdiction over foreign corporations "doing business" in New York, regardless of whether the claim arose from that business. N.Y.C.P.L.R. § 301 (authorizing jurisdiction on any grounds available before enactment); *Simonson v. International Bank*, 14 N.Y.2d 281, 285, 200 N.E.2d 427, 429, 251 N.Y.S.2d 433, 436 (1964) (prior to enactment of C.P.L.R., an unauthorized foreign corporation was "amenable to local suit only if it was engaged in such a continuous and systematic course of 'doing business' here as to warrant a finding of its 'presence' in this jurisdiction").

■ WFA has failed to allege the type of "continuous and systematic" conduct in New York necessary to a finding of jurisdiction under this provision. Instead, WFA merely speculates that the instant transaction may be "typical of the way Event does business," so that Event may have regular customers in

New York. Unsupported allegations such as these are insufficient to confer personal jurisdiction over an out-of-state defendant. *See Falik,* 884 F.Supp. at 865. Thus, for the reasons stated above, the Court does not have personal jurisdiction over Event with regard to the instant claims.

### 4. *Venue Transfer*

Event has moved, alternatively, for a transfer of venue to the Central District of California pursuant to 28 U.S.C. § 1404(a). Section 1404(a) allows a district court, "[f]or the convenience of parties and witnesses, in the interest of justice," to transfer a civil action to a district where it might have been brought. 28 U.S.C. § 1406(a) *requires* the Court, if venue here is improper, to dismiss or, in the interest of justice, to transfer the action to a district where venue would be proper.

The absence of personal jurisdiction does not vitiate the Court's power to transfer a case to a district where venue is proper. *Corke v. Sameiet M.S. Song of Norway,* 572 F.2d 77, 78–80 (2d Cir.1978) (citing *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962)). The Second Circuit has held that a district court without jurisdiction over the defendant may transfer an otherwise properly venued action pursuant to Section 1406(a). *Corke,* 572 F.2d at 79–80. That is, the statutory predicate of improper venue may be satisfied solely by the absence of personal jurisdiction. *Id.; Spar, Inc. v. Information Resources, Inc.,* 956 F.2d 392, 394 (2d Cir.1992) (§ 1406 transfer permitted notwithstanding proper venue where "the transfer has enabled the parties to surmount an obstacle, such as the lack of jurisdiction, which would have precluded suit in the transferor district"); *Troyer v. Karcagi,* 488 F.Supp. 1200, 1206 (S.D.N.Y.1980) (Sweet, J.).

When transferring a case in the interest of justice based on the lack of personal jurisdiction, a court need not elect between reliance on 28 U.S.C. § 1404(a) and 28 U.S.C. § 1406(a). *Corke,* 572 F.2d at 80; *Troyer,* 488 F.Supp. at 1206–07 ("taken together the statutes confer authority to transfer the suit whether or not venue is properly laid in [the transferor] district"). Also, the mere appearance of a colorable jurisdictional issue may be a factor in a court's decision to transfer venue under 28 U.S.C. § 1404(a). *Lencco Racing Co., Inc. v. Arctco, Inc.,* 953 F.Supp. 69, 73 (W.D.N.Y.1997).

Although it does not otherwise appear that this forum is inconvenient for purposes of Section 1404(a), the lack of personal jurisdiction over Event justifies the transfer of this action to the Central District of California, where Event concededly is subject to jurisdiction. This case is hereby transferred to the Central District of California.

SO ORDERED.