**MORTGAGE FUNDING CORPORATION,**
Plaintiff,

v.

**BOYER LAKE POINTE, LC and Brian Gochnour, Defendants.**

**No. 04 CIV. 4384(ADS)(JO).**

United States District Court, E.D. New York.

July 21, 2005.

Bernstein & Bernstein, by Marc A. Bernstein, Esq., of Counsel, New York, NY, Attorneys for the Plaintiff.

The Law Offices of Share and Blejec, LLP, by Ivan F. Blejec, Esq., Of Counsel, New York, NY, Attorneys for the Defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

Mortgage Funding Corporation, ("MFC" or the "Plaintiff"), a mortgage broker, commenced this diversity action against Boyer Lake Pointe, LC ("Boyer Lake") and Brian Gochnour ("Gochnour") (collectively, the "Defendants") seeking money damages for an alleged breach of an oral mortgage brokerage agreement.

Pending before the Court is a motion by the Defendants pursuant to Fed.R.Civ.P. 12(b)(2) on the basis that the Court lacks personal jurisdiction over the Defendants.

## I. BACKGROUND

On or about April 24, 2003, David Hirsch, an employee of the Mortgage Funding Corporation, a New York corporation, telephoned Gochnour regarding potential benefits Boyer Lake, a Utah corporation, might receive from new mortgage financing opportunities. According to the declaration of Brian Warwick ("Warwick"), the Director of Finance of MFC (the "Declaration"), Hirsch alerted Gochnour, also a Utah resident, to the option of an "indepth pre-payment break-even analysis" on any Boyer Lake property to determine whether refinancing a mortgage loan on such property was economically sound. In or about May 2003, Gochnour identified Boyer Lake's Lake Point Shopping Center's two properties (collectively, the "Lake Pointe I and II Properties") for possible refinance opportunities. On June 20, 2003, Gochnour sent a ten page fax to Warwick attaching the combined financial statement for the Lake Pointe I and II Properties, along with various other documents.

With this information, and with data obtained during subsequent telephone calls with Gochnour, Warwick and a MFC analyst expended several hundred hours compiling a detailed proposal and analysis for the potential refinancing of the Lake Pointe I and II Properties (the "Proposal"). To create the Proposal, MFC utilized its previously designed computer program which generates a sophisticated and proprietary cost/benefit and interest rate sensitivity analysis that accounts for the after-tax implications of pre-payment penalties. On July 8, 2003, Warwick sent a seven page fax to Gochnour enclosing the Proposal. On July 21, 2003, in response to the Proposal, Gochnour sent an e-mail to Warwick advising him that Boyer Lake is contemplating the Proposal but "will not have a final decision until the end of the week." In late August 2003, Gochnour requested a revision to the Proposal, to which the Plaintiff responded on September 25, 2003 by faxing a seven page "updated financial analysis" containing the requested revisions.

According to the Declaration, on September 29, 2003, Gochnour e-mailed Warwick that he was currently reviewing the

Proposal. During a telephone conversation in October 2003, Gochnour expressly told Warwick that Boyer Lake had no intentions on using another broker for the refinancing, considering all the analysis work it had done in designing the Proposal.

After a series of telephone and e-mail exchanges in which the terms of a "Brokerage Fee Agreement," including a New York Choice of Law provision, were negotiated, in an e-mail dated October 14, 2003, Gochnour sent an e-mail to Warwick which stated in part:

> As I met with our company's president to go over the brokerage agreement, we have decided not to move forward with Mortgage Funding Corporation on the Lakepointe refinancing. I appreciate the amount of time and effort you spent in putting this deal together, however, we have determined that our company needs to support the viability of our local brokerage community. Some of our brokers occupy space in our buildings and it is important that we support these relationships as they have supported our company.

Warwick Decl. ¶ 19.

The complaint alleges that Boyer Lake utilized MFC's work product to obtain financing from another mortgage broker. The Plaintiff further asserts that the Defendants' failure to execute the commission agreement is a bad faith failure to perform their duties under the alleged oral contract.

On October 12, 2004, the Plaintiff commenced this action against Boyer Lake and Gochnour, individually. The complaint includes causes of action for: (1) Breach of an oral contract regarding the receipt of a commission from the Defendants in return for refinancing work on the Lake Pointe I and II Properties; (2) unjust enrichment; (3) fraud/false-promise;

(4) fraud/concealment; and (5) breach of fiduciary duty. The Defendants now move to dismiss this action pursuant to Fed. R.Civ.P. 12(b)(2) for lack of personal jurisdiction, or alternatively, pursuant to Fed. R.Civ.P. 12(b)(6) for failure to state a claim. In its opposition, the Plaintiff concedes to the Defendants' motion to dismiss all of the claims except the claim for breach of contract, leaving that as the Plaintiff's sole basis for recovery.

## II. DISCUSSION

In a motion to dismiss for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2), the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant. *See Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir.2001); *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir.1999) (citing *Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 566 (2d Cir.1996)). Where, as here, the parties have not yet conducted discovery, the plaintiff may defeat such a motion by making a prima facie showing of jurisdiction by way of the complaint's allegations, affidavits, and other supporting evidence. *Bank Brussels Lambert*, 171 F.3d at 784; *Kernan v. Kurz–Hastings, Inc.,* 175 F.3d 236, 240 (2d Cir.1999).

Furthermore, materials presented by the plaintiff should be construed in the light most favorable to the plaintiff and all doubts resolved in its favor, "notwithstanding a controverting presentation by the moving party." *See A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir.1993).

 Personal jurisdiction over a nonresident defendant in a federal diversity action is determined by the law of the forum state. *See Whitaker v. Amer. Tele., Inc.*, 261 F.3d 196, 208 (2d Cir.2001).

Therefore, this Court must look to New York's personal jurisdiction long-arm statutes, namely New York Civil Practice Law and Rules ("CPLR") § 301 and/or § 302, to determine whether the Plaintiff has made a prima facie showing of personal jurisdiction over the out-of-state Defendants. Then, if jurisdiction under the long arm statutes is found, the Court must look to whether such exercise of jurisdiction under state law satisfies federal due process requirements of "fair play and substantial justice." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). (1985) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 320, 66 S.Ct. 154, 90 L.Ed. 95 (1945). (1945)); *see also Bank Brussels Lambert,* 171 F.3d at 784.

In the complaint, the Plaintiff does not set forth the basis of personal jurisdiction, but in its memorandum of law in opposition to the motion to dismiss, the Plaintiff argues that personal jurisdiction exists pursuant to CPLR § 302(a)(1) which raises three reasons why the Court should find that the Defendants had sufficient contact with New York thereby establishing personal jurisdiction. Specifically, the Plaintiff contends that: (1) the proposed contract at issue contained a New York choice-of-law clause; (2) the proposed contract was to be performed in New York; and (3) the proposed contract required payments be made in New York.

■ Section 302(a)(1) confers jurisdiction over a non-domiciliary corporation that "transacts business within the state or contracts anywhere to provide goods and services in the state," if there is a "direct relationship between the cause of action and the in state conduct." *Fort Knox Music, Inc. v. Baptiste,* 203 F.3d 193, 196 (2d Cir.2000). In contrast to "doing business," "transacting business requires only a minimal quantity of activity, provided that it is of the right nature and quality." *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.,* 98 F.3d 25, 29 (2d Cir.1996). A single transaction may suffice for personal jurisdiction under Section 302(a)(1), and physical presence by the defendant in the forum state during the activity is not necessary. *Bank Brussels Lambert,* 171 F.3d at 787. In situations where contracts are executed outside the state, the court must conduct an "examination of any other purposeful acts on defendant's behalf which in the aggregate may demonstrate that defendant has purposefully availed himself of the benefits and protections of [the] state." *Southern Industries of Clover, Ltd. v. Tex Cellence, Inc.,* 2005 WL 818400, at *4, 2005 slip. op. 50480(U) at 4 (N.Y.Sup.Ct.2005) (citing *Longines–Wittnauer Watch Co. v. Barnes & Reinecke, Inc.,* 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965)); *see also Creative Socio–Medics Corp. v. City of Richmond,* 219 F.Supp.2d 300, 306 (E.D.N.Y.2002).

■ To determine whether a party in a contract action has "transacted business" within the meaning of Section 302(a)(1), courts consider, among other things, the following factors: (1) whether the defendant has an on-going contractual relationship with a New York entity; (2) whether the contract was negotiated or executed in New York, and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (3) whether the contract is to be performed in New York; (4) whether the contract requires notices and payments to be sent to New York; and (5) whether the contract contains a New York choice-of-law clause. *See Sunward Electronics, Inc. v. McDonald,* 362 F.3d 17, 22–23 (2d Cir.2004) (citing *Agency Rent A Car,* 98 F.3d at 29).

No single factor is dispositive, but rather a finding of personal jurisdiction must be based upon the totality of the circumstances. *Agency Rent A Car*, 98 F.3d at 29. As stated above, here, the Plaintiff alleges that the Defendants breached an oral contract. The Defendants dispute that an oral contract was formed and/or is enforceable due to the statute of frauds. However, even assuming that an enforceable contract was formed, as explained in more detail below, the Defendants did not "transact business" in New York within the meaning of C.P.L.R. § 302(a)(1).

First, the Defendants do not have an ongoing contractual relationship with the New York plaintiff. Even if there was an oral contract, this one contract did not establish an "on going contractual relationship." *See Burrows Paper Corp. v. R.G. Engineering, Inc.*, 363 F.Supp.2d 379, 386 (N.D.N.Y.2005) (finding no "on going contractual relationship" where the contract at issue is the only transaction entered into between the parties).

Turning to the second factor, namely whether the contract was negotiated or executed in New York, it is undisputed that the alleged oral contract was negotiated and executed solely via telephone, e-mail, and facsimile communications between parties located in different states. Importantly, there is no allegation that the Defendants ever traveled to New York during the negotiations or during the formation of the alleged oral contract. "[C]ourts seem generally loath to uphold jurisdiction under the 'transaction in New York' prong of CPLR 302(a)(1) if the contract at issue was negotiated solely by mail, telephone, and fax without any New York presence by the defendant." *Worldwide Futgol Associates, Inc. v. Event Entertainment, Inc.*, 983 F.Supp. 173, 177 (E.D.N.Y.1997) (quoting Vincent C. Alex-

ander, 1996 Supplemental Practice Commentary to § 302, at C302:10); *United Computer Capital Corp. v. Secure Prods., L.P.*, 218 F.Supp.2d 273, 278 (N.D.N.Y. 2002) ("Where a plaintiff's cause of action is based upon a contract, negotiation of the contractual terms by phone, fax or mail with the New York party is generally insufficient to support a finding of the transaction of business in New York.").

Although telephone communications between parties may, in few instances, suffice as "transacting business," in such a scenario, the defendant must "actively 'project' itself" into New York, thereby availing itself of the business privileges and protections of the state. *Worldwide Futgol*, 983 F.Supp. at 177 (citing *Parke–Bernet Galleries, Inc. v. Franklyn*, 26 N.Y.2d 13, 308 N.Y.S.2d 337, 256 N.E.2d 506 (1970)). Having reviewed the numerous affidavits, e-mails, and letters submitted by the Plaintiff, it is clear to this Court that the Defendants did not "actively project" themselves into New York in this instance. *See e.g., Fiedler v. First City National Bank of Houston*, 807 F.2d 315 (2d Cir.1986) (finding no personal jurisdiction over defendant-bank that made two telephone calls and a mailing to New York plaintiffs).

Significant to this determination is the fact that the Plaintiff that initiated the communication with the Defendant via telephone and any interaction and communication the Defendants had with New York arises from the Plaintiff's initial communication. *See, e.g., Professional Personnel Mgt. Corp. v. Southwest Medical Assocs., Inc.*, 216 A.D.2d 958, 628 N.Y.S.2d 919, 920 (4th Dep't 1995) (finding no personal jurisdiction in a case where the plaintiff initially contacted defendant by telephone; the parties negotiated an agreement by telephone; and subsequently entered into a written contract that was

sent by plaintiff from New York to Nevada, where it was signed by defendant). Accordingly, this factor cuts in favor of the Defendants.

Third, as to the subject matter of the alleged oral contract, here, the Proposal involved properties solely situated in Utah. Even though the Plaintiff may have expended time, energy and resources in New York analyzing the relevant data and carrying out their obligations under the alleged contract, the Plaintiff's business interactions with New York are not at issue when assessing personal jurisdiction. Rather, the Court must evaluate the Defendants' activities and conduct. *See Success Marketing*, 612 N.Y.S.2d at 451; *see also Worldwide Futgol*, 983 F.Supp. at 177. Because the subject matter of the alleged contract is located in Utah, the Court finds that this factor also favors the Defendants.

As to the fourth factor, regarding whether the contract requires notices and payments to be sent to New York, this Court finds that the Plaintiff fails to allege or provide factual support that would suggest that the purported oral contract covered such details as the delivery of payment.

Finally, while the proposed written brokerage agreements contain a New York choice-of-law stipulation, the complaint fails to demonstrate that any such consideration was included in the alleged oral contract between the parties. The Court finds that the existence of a New York choice-of-law provision in an unexecuted document does not support personal jurisdiction. Having analyzed the totality of the circumstances, the Court finds that the Boyer Lakes' ties to New York are minimal arising from the chance solicitation by Plaintiff via the telephone.

Accordingly, based on the allegations and documents before the Court, the Court finds that the Plaintiff did not establish personal jurisdiction over the Defendants. Because personal jurisdiction pursuant to the long-arm statute is not present, the Court need not assess whether a jurisdictional finding in this matter would satisfy due process. Nor will the Court address the Defendants arguments to dismiss this action for failure to state a claim.

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that the motion by Boyer Lake and Gochnour to dismiss this action for lack of personal jurisdiction is **GRANTED;** and it is further

**ORDERED,** that the Clerk is directed to close this case.

**SO ORDERED.**