**ARISTA TECHNOLOGIES, INC., Plaintiff,**

v.

**ARTHUR D. LITTLE ENTERPRISES, INC., Jerry Iggulden, Invention Management Associates, Inc. and Design Labs, Inc., Defendants.**

**Arthur D. Little Enterprises, Inc., Third–Party Plaintiff,**

v.

**Michael Harvey and Chambord Technologies, Inc., Third–Party Defendants.**

**No. CV95–0789 ADS.**

United States District Court, E.D. New York.

Dec. 28, 2000.

Proskauer Rose LLP by Steven M. Kayman, Karen D. Coombs, New York City, for Plaintiff–Counterclaim Defendant Arista Technologies, Inc.

Hamilton, Brook, Smith & Reynolds, P.C. by David J. Brody, Deirdre E. Sanders, Lexington, MA, for Defendant–Counterclaim and Third Party Plaintiff Arthur D. Little Enterprises, Inc., Defendant–Counterclaim Plaintiff Jerry Iggulden, and Defendant–Counterclaim Plaintiff Invention Management Associates, Inc.

Arter & Haden LLP by E.P. Michael Karcis, Woodland Hills, CA, for Defendants–Counterclaim Plaintiffs Jerry Iggulden and Invention Management Associates, Inc.

Law Offices of Leonard G. Learner by Leonard G. Learner, Wellesley, MA, for Defendant Design Labs, Inc.

Paul, Weiss, Rifkind, Wharton & Garrison by Robert S. Smith, New York City, for Third–Party Defendants Michael Harvey and Chambord Technologies, Inc.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This case arose out of a dispute between Arista Technologies, Inc. (the "plaintiff" or "Arista") and Arthur D. Little Enterprises (a "defendant" or "ADLE") regarding the licensing agreement of patented technology owned by ADLE. The technology in question, known as "video spot remover" ("VSR") technology, permits video cassette recorders ("VCRs") to skip past commercials in videotaped television programs when the videotapes are played back.

### I. BACKGROUND

#### A. Factual Background

The following facts are taken from the Amended Complaint. In March 1993, defendant Jerry Iggulden ("Iggulden"), the owner and sole shareholder of defendant Invention Management Associates ("IMA"), and purported inventor of the VSR technology, assigned his rights to the technology to defendant ADLE, with the understanding that ADLE would develop it into something that could be integrated into a consumer product. On March 19, 1993, ADLE licensed the VSR System to

plaintiff Arista, reserving for itself the right to license the technology to VCR manufacturers for incorporation directly into VCRs. At the time of license, ADLE told Arista that the VSR System worked.

Arista hired third-party defendant Michael Harvey ("Harvey"), who was doing business as third-party defendant Chambord Technologies, Inc. ("Chambord"), to be its project manager and to supervise the integration of the VSR System into the consumer product called "Commercial Brake," which is a device, separate and apart from a VCR, that attaches to a television and performs the commercial-skipping functions of the VSR System. Harvey, a former ADLE engineer, retained a team of engineers from Arthur D. Little ("ADL"), ADLE's parent corporation, to assist him in developing the VSR System technology. In May 1993, after a meeting with the ADL engineers, Harvey concluded that the VSR System technology described in ADLE's '091 patent, did not work as promised; was inadequate to create a viable consumer product; and would require extensive engineering to develop it to a point where it would be suitable for integration into a consumer product.

Later that month, Harvey fired the ADL team and hired Kyle Fields ("Fields") and his company defendant Design Labs, Inc. ("Design Labs") to develop the VSR System for Commercial Brake. After an initial review of the technology, Fields concluded that it was virtually useless, and, therefore, Design Labs began working from scratch.

Meanwhile, Iggulden agreed to help Arista make Commercial Brake in exchange for a fee of $10,000 per month for ten months; reimbursement of travel, entertainment, and other expenses, and 40% of the net profits on products sold by the venture. Iggulden was to provide Arista with consulting and management services for the development and marketing of the venture's product.

As a result of the relationship between Iggulden and Arista, Iggulden gained confidential information regarding Arista's marketing research, including the results of consumer focus group studies. According to Arista, Iggulden gave this information to ADLE, which, in turn, used it to undermine Arista's marketing of Commercial Brake and to benefit ADLE's own competing efforts to license the VSR System to VCR manufacturers.

Arista asserts that after Harvey hired Fields and Design Labs to develop the VSR System, Iggulden "mounted a tireless and successful effort to obtain Arista's confidential technology for ADLE without any compensation for Arista as required by the license" (Amended Complaint, ¶ 47). Iggulden was included in an August 18, 1993, meeting to discuss Arista's marketing plans. Iggulden claimed that the purpose of the meeting was so that everyone could "read from the same script," but according to the plaintiff, Iggulden actually used this meeting to send Arista's marketing plans to ADLE.

Also in 1993, Iggulden threatened Arista that if it did not sign an Invention Rights and Disclosure Agreement, which would have permitted Design Labs to give the technology it had developed for Arista directly to ADLE, then ADLE would "conduct a very public launch" of its own version of the VSR System at the same time and place as the planned launch of Commercial Brake. Arista approached ADLE and asked for assurances that it would not conduct a simultaneous launch of a competing product, and ADLE promised that it would not do so. Based on ADLE's assurances, Arista chose to continue giving Iggulden confidential marketing and technical information. Ultimately, at the January 1994 Consumer Electronics Show ("CES"), Arista launched Commercial Brake, and ADLE, together with Iggulden, introduced its version of the VSR technology. Iggulden, who was being paid by Arista to promote their product, used Arista's booth and resources at the CES to promote ADLE's product and to conduct

meetings with VCR manufacturers on licensing of the VSR technology.

On January 24, 1994, Fields entered into another contract with Harvey, obligating Design Labs to continue its work for Arista in exchange for a fee of $20,000 per month. Meanwhile, Iggulden began trying to persuade Fields and Design Labs to work for ADLE. Iggulden's patent attorney sent Fields copies of Arista's license with ADLE and Arista's confidential contract with Harvey and promised to indemnify Design Labs and Fields against any legal claims by Arista and Harvey.

Throughout February and March 1994, Fields and ADLE exchanged drafts of contracts, and on March 14, 1994, Fields signed a contract whereby Fields and Design Labs would help ADLE develop the VSR System so that it could be integrated into VCRs. Pursuant to the contract, ADLE would pay Fields the sum of $10,000 per month, and Fields would be able to work directly with the VCR manufacturers. On March 15, 1994, Fields signed an agreement with ADLE, promising to keep secret the existence of their March 14 contract.

From March through August 1994, Design Labs was working for Arista and ADLE, though Arista was unaware that Design Labs was also working for ADLE. During this five-month period, Design Labs disclosed to ADLE all of the intellectual property Design Labs had acquired from Arista as a result of working for Arista. In addition, Design Labs assigned to ADLE all of their rights in patent applications that had been filed based on Arista's intellectual property. On August 19, 1994, ADLE increased the compensation to Design Labs to the sum of $25,000 per month. On August 20, 1994, Fields provided Arista with written notice that Design Labs was terminating its work for Arista on the ground that it owed the company a few thousand dollars.

### B. Procedural History

On January 10, 1996, this Court granted ADLE's motion to compel arbitration and stayed the court proceedings pending the arbitration decision. In addition, the Court denied Arista's motion to amend the complaint, with leave to renew following the arbitrator's decision regarding the arbitrability of the respective claims.

On May 16, 1996, the arbitrator held that all of the claims were arbitrable with the exception of those claims involving the validity of various patents. In August 1996, Arista renewed its motion to amend the complaint. In a letter, dated February 5, 1997, the Court directed that the motion be withdrawn, without prejudice and with leave to renew after a decision by the arbitrator.

On July 29, 1997, the arbitrator held that although Arista materially breached the license by failing to pay royalties, neglecting to put ADLE's patent number on the technology, and failing to disclose certain technological advances, ADLE must pay Arista approximately $700,000 for the technology it appropriated from Arista without repaying their costs. The arbitrator did not find that ADLE had committed fraud, breached the license, misappropriated Arista's technology, tortiously interfered with the contract, or violated Massachusetts law. After the Award of Arbitration was issued, Arista and ADLE requested reconsideration and modification on various different grounds. In response, the arbitrator issued a Supplemental Order on August 15, 1997, and a Modified Award on December 17, 1997 (all three awards collectively will be referred to as the "Arbitration Award").

On November 13, 1998, the Court granted ADLE's motion to confirm the Arbitration Award and directed the Clerk of the Court to close the case. *See Arista v. Arthur D. Little Enterprises, Inc.*, 27 F.Supp.2d 162 (E.D.N.Y.1998). On November 12, 1999, the Court granted Arista's motion to amend the complaint and directed the Clerk of the Court to re-open

the case, but denied Arista's motion for a permanent injunction.

Arista alleges five counts in its Amended Complaint. In the first count, Arista claims that Iggulden breached his contract with Arista by failing to render any services of value to the plaintiff and breached its implied covenant of good faith and fair dealing by intentionally and maliciously harming Arista. As a second count, Arista alleges fraud and fraudulent non-disclosure by Iggulden on the grounds that (1) Iggulden falsely described the quality, nature, and extent of the services he was providing Arista, and Arista continued to pay Iggulden based on those false representations; (2) Iggulden facilitated the secret diversion of Arista's intellectual property from Design Labs to ADLE; and (3) Iggulden knew that ADLE planned to launch a competitive product on the same date that Arista launched "Commercial Brake" but failed to disclose this fact in violation of the implied covenant of good faith and fair dealing in the IMA contract. In the third count, Arista claims fraudulent non-disclosure by Design Labs, which Arista alleges failed to inform it that Design Labs was performing competing work for ADLE. In its fourth cause of action, Arista claims that Design Labs breached its contract with Arista, because Design Labs agreed to assign all of its inventions to Harvey and Arista and to keep Arista's intellectual property and trade secrets confidential, but Design Labs failed to do so. As a fifth cause of action, Arista seeks a judgment declaring the '091 Patent belonging to ADLE to be void and invalid.

Presently before the Court are (1) a motion to dismiss Count II of the Amended Complaint by defendants Iggulden and IMA on the ground that it fails to plead fraud with the particularity required by Federal Rule of Civil Procedure 9(b); (2) a motion to dismiss the Amended Complaint by defendant Design Labs; (3) a cross-motion to for leave to file a Second Amended Complaint by plaintiff Arista;

and (4) a motion to dismiss the Second Amended Complaint by defendant ADLE.

## II. DISCUSSION

### A. Motion to Dismiss Count II of the Amended Complaint by Defendants Iggulden and IMA for Failure to Plead Fraud With Particularity

Arista raises two claims in Count Two of the Amended Complaint: a fraudulent misrepresentation claim (see Amended Complaint ¶ 75), and a fraudulent nondisclosure claim (see Amended Complaint ¶ 76). In their original motion papers, Iggulden and IMA moved to dismiss both claims. However, at oral argument held on December 22, 2000, Iggulden and IMA withdrew their motion to dismiss the fraudulent nondisclosure claim. Accordingly, the Court addresses only the motion to dismiss the fraudulent misrepresentation claim.

■ When pleading a claim for fraud or misrepresentation, the plaintiff must aver the alleged fraudulent acts with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure. See Luce v. Edelstein, 802 F.2d 49, 54 (2d Cir.1986); Asdourian v. Konstantin, 77 F.Supp.2d 349, 353 (E.D.N.Y.1999). To satisfy the particularity requirement of Rule 9(b), the "the complaint must allege the time, place, speaker, and sometimes even the content of the alleged misrepresentation." Ouaknine v. MacFarlane, 897 F.2d 75, 79 (2d Cir.1990); Di Vittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir.1987); Luce, 802 F.2d at 54.

■ Although "knowledge" and "condition of mind" may be stated in general terms (see Fed.R.Civ.P. 9(b)), "the relaxation of Rule 9(b)'s specificity requirement for scienter 'must not be mistaken for license to base claims of fraud on speculation and conclusory allegations.'" Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir.1994) (quoting O'Brien v. National Property Analysts Partners, 936

F.2d 674, 676 (2d Cir.1991)); *Ouaknine,* 897 F.2d at 79–80. Thus, allegations of scienter are sufficient when they are "supported by facts giving rise to a 'strong inference' of fraudulent intent." *Ouaknine,* 897 F.2d at 80; *see Shields,* 25 F.3d at 1128; *O'Brien,* 936 F.2d at 676. The "strong inference of fraud," in turn, may be established either "(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields,* 25 F.3d at 1128 (citing *In re Time Warner Inc. Securities Litig.,* 9 F.3d 259, 268–69 (2d Cir.1993)); *Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46, 50 (2d Cir. 1987).

■ After examining the Amended Complaint and hearing oral argument, the Court finds that Arista has adequately pled fraud with respect to only one statement allegedly made by Iggulden. The Amended Complaint states the following in regard to Arista's fraudulent misrepresentation claim:

> 75. Iggulden made false representations about the quality, nature, and extent of the services he was providing Arista under the IMA Contract. In reliance on those false representations, Arista continued to make payments to Iggulden and was damaged thereby.

(Amended Complaint, ¶ 75). Although paragraph 75 refers to multiple "false representations," the Amended Complaint describes only one specific alleged misrepresentation by Iggulden. Arista alleges that on August 18, 1993, Iggulden met with Arista to discuss Arista's marketing plans for the January 1994 CES. According to Arista, at that meeting, Iggulden told Arista that the purpose of the meeting was " 'so that we are all reading from the same script' " (Amended Complaint ¶ 54). Clearly, this portion of the Amended Complaint, read together with paragraph 75, alleges the date, speaker, place, and content of the alleged misrepresentation.

*Ouaknine,* 897 F.2d at 79; *Di Vittorio,* 822 F.2d at 1247; *Luce,* 802 F.2d at 54. Accordingly, Arista's allegation of fraud, with respect to this statement only, satisfies the particularity requirement of Rule 9(b).

However, the Court finds that all other assertions of fraud in the Amended Complaint lack the particularity required by Rule 9(b). Arista claims that Iggulden (1) "made false representations about the quality, nature, and extent of the services he was providing Arista under the IMA contract" (*see* Amended Complaint ¶ 75); (2) made "other assurances" (*see* Amended Complaint ¶ 53); and (3) "mounted a tireless and successful effort to obtain Arista's confidential technology" (*see* Amended Complaint ¶ 74). However, without more information, a defendant reading these assertions would be aware only of vague allegations of unstated misrepresentations, assurances, and efforts. The defendant would be forced to defend himself and his reputation without the benefit of knowing when the false representations are alleged to have been made, to whom they were made, where they were made, or anything specific about their content. Moreover, the Amended Complaint does not put forth a single detail about the types of services or specific confidential technology to which the alleged misrepresentations related.

In addition, Arista's allegations regarding how they relied on the alleged misrepresentations to their detriment are completely vague. The wording of the fraudulent misrepresentation claim indicates that Arista claims its damages were incurred as a result of paying Iggulden when he was not owed money. However, looking at Arista's factual allegations, it appears that it could be claiming that its damages were the result of giving Iggulden market and technological research in reliance on his misrepresentations about the work he was doing for them. Rule 9(b) is intended "to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and

to protect a defendant against the institution of a strike suit." *O'Brien,* 936 F.2d at 676. Other than Iggulden's August 18, 1993, statement, the Amended Complaint does not specify any other misrepresentation and fails to describe how Arista relied on alleged misrepresentations to their detriment. Thus, with the exception of Iggulden's August 18, 1993, statement to Arista that the purpose of their meeting was to ensure that they were all on the same page, Arista's claim of fraud does not fulfill either the letter or the purpose of Rule 9(b).

Accordingly, the Court grants in part and denies in part the motion to dismiss Count II of the Amended Complaint. Arista's fraudulent misrepresentation claim is dismissed except to the extent that it relies upon the August 18, 1993, statement by Iggulden to Arista. Any future litigation of the fraudulent misrepresentation claim is limited to that statement.

■ In passing, the Court notes the well settled principle of New York State law that in order to allege a claim of fraud arising out of a contractual relationship, a plaintiff must not only allege the basic elements of fraud, but also either "(1) a legal duty separate and apart from the contractual duty to perform; (2) a fraudulent representation collateral or extraneous to the contract; or (3) special damages proximately caused by the fraudulent representation that are not recoverable under the contract measure of damages." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs. Inc.,* 98 F.3d 13, 20 (2d Cir. 1996); *DS Capital, Inc. v. Carlisle Sports Emporium, Inc.,* 116 F.Supp.2d 376, 378 (E.D.N.Y.2000); *Pacs Indus. v. Cutler–Hammer, Inc.,* 103 F.Supp.2d 570, 571–72 (E.D.N.Y.2000). Given these requirements, the Court is uncertain about how the plaintiff intends to establish fraud arising out of the contractual relationship between Arista and Iggulden.

## B. Motion to Dismiss Counts III and IV of the Amended Complaint By Defendant Design Labs

Arista alleges two causes of action against Design Labs in the Amended Complaint: breach of contract and fraudulent non-disclosure. In support of its breach of contract claim, Arista asserts that Design Labs (1) gave ADLE Arista's intellectual property and trade secrets; (2) worked for ADLE while doing similar work for Arista; and (3) failed to provide Arista with all of the technological advances Design Labs developed while under contract with Arista. In regard to the fraudulent non-disclosure claim, Arista asserts that Design Labs owed Arista duties of good faith and fair dealing, because those duties were implied in the contracts between Design Labs and Arista. According to Arista, Design Labs breached this duty by failing to disclose (1) the work it was performing for ADLE, and (2) the alleged fact that it had divulged Arista's confidential intellectual property to ADLE. Design Labs moves to dismiss the two counts against them on the grounds that (1) this Court lacks personal jurisdiction over Design Labs; (2) the contractual arbitration and forum selection clauses bar Arista's Litigation against Design Labs; and (3) Arista's claims against Design Labs are barred by the applicable statute of limitation.

### 1. Personal Jurisdiction

In deciding defendant Design Labs' motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the Court will consider the facts as set forth in the Amended Complaint and the various affidavits submitted by the parties on that issue. *See Ball v. Metallurgie Hoboken–Overpelt, S.A.,* 902 F.2d 194, 196–98 (2d Cir.1990).

■ In a 12(b)(2) motion, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant. *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779, 784 (2d Cir.1999); *Kernan v. Kurz–Has-*

*tings, Inc.*, 175 F.3d 236, 240 (2d Cir.1999) (citing *Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 566 (2d Cir.1996)). Where, as here, the court is relying upon pleadings and the affidavits alone, *see Credit Lyonnais Securities (U.S.A.), Inc. v. Alcantara*, 183 F.3d 151, 153 (2d Cir.1999) (holding that court may determine whether it has personal jurisdiction over a defendant by reviewing the pleadings; it is not required to hold evidentiary or factual hearing for this purpose); *Telebyte, Inc. v. Kendaco, Inc.*, 105 F.Supp.2d 131, 133 (E.D.N.Y.2000), the plaintiff is only required to make a prima facie showing of jurisdiction, including an averment of facts that, if credited by the ultimate trier of fact, sufficiently establishes jurisdiction over the defendants. *See Kernan*, 175 F.3d at 240; *Jazini v. Nissan Motor Co. Ltd.*, 148 F.3d 181, 184 (2d Cir.1998). Furthermore, the pleadings and affidavits should be construed in the light most favorable to the plaintiff and all doubts resolved in its favor, "notwithstanding a controverting presentation by the moving party." *See A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir.1993); *Telebyte, Inc.*, 105 F.Supp.2d at 133–34.

Personal jurisdiction over a non-resident defendant in a federal diversity action is determined by the law of the forum state. *See A.I. Trade Finance, Inc.*, 989 F.2d at 79–80; *Jazini*, 148 F.3d at 183–84. As a result, the Court must look to New York's personal jurisdiction statutes, CPLR §§ 301 and 302, to determine whether Arista has made a prima facie showing of personal jurisdiction over Design Labs. If the exercise of jurisdiction is appropriate under the statute, the court then must decide whether such exercise comports with the requisites of due process. *See Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 27 (2d Cir.1997).

Although Arista does not specify a jurisdictional theory in the Amended Complaint, in their current motion papers Arista claims that Design Labs is subject to the personal jurisdiction of this Court pursuant to CPLR sections 302(a)(1) and 302(a)(3)(ii). Arista also contends that personal jurisdiction over Design Labs comports with due process because Design Labs knew or should reasonably have expected that its alleged breaches of contract and alleged tortious conduct would have consequences within the State of New York. The Court will examine each of these theories of jurisdiction in turn.

### a) Personal Jurisdiction Under Section 302(a)(1)

CPLR section 302(a)(1) confers jurisdiction over a foreign corporation that "transacts business within the state or contracts anywhere to provide goods and services in the state" if there is a "direct relationship between the cause of action and the in state conduct." *Fort Knox Music, Inc. v. Baptiste*, 203 F.3d 193, 196 (2d Cir.2000); *Credit Lyonnais Securities (U.S.A.), Inc. v. Alcantara*, 183 F.3d 151, 153 (2d Cir. 1999); *see also Kronisch v. United States*, 150 F.3d 112, 130 (2d Cir.1998) (holding that plaintiff establishing jurisdiction under "transacting business" theory must also show that the cause of action "arises out of" defendant's transactions within the state). The exercise of jurisdiction under this provision will comport with the due process guarantees only if " 'the defendant purposefully avails itself of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws.' " *McKee Elec. Co. v. Rauland–Borg Corp.*, 20 N.Y.2d 377, 382, 283 N.Y.S.2d 34, 229 N.E.2d 604 (1967) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). *Accord CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir.1986).

To determine whether a party in a contract action has "transacted business" within the meaning of § 302(a)(1), courts consider, among other things, the following factors: (1) whether the contract was negotiated and executed in New York, and whether the defendant visited New York

for the purpose of meeting with the parties after the contract had been executed; (2) whether the contract contains a New York choice-of-law clause; (3) whether the contract is to be performed in New York; (4) whether the contract requires notices and payments to be sent to New York; and (5) defendant's physical presence in New York in connection with an ongoing contractual relationship with a New York corporation. *See Agency Rent A Car System, Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir.1996); *Unlimited Care, Inc. v. Visiting Nurse Ass'n of Eastern Massachusetts, Inc.*, 42 F.Supp.2d 327, 330–31 (S.D.N.Y.1999); *Worldwide Futgol Assocs., Inc. v. Event Entertainment, Inc.*, 983 F.Supp. 173, 176–77 (E.D.N.Y.1997). The ultimate conclusion should be based on the totality of the circumstances. *See Agency Rent A Car*, 98 F.3d at 29; *Snyder v. Madera Broadcasting, Inc.*, 872 F.Supp. 1191, 1194 (E.D.N.Y.1995).

■ Here, Arista contends that Design Labs transacted business in New York, because Design Labs entered into contracts with a New York corporation, namely Arista, to supply technology services in New York State. Arista further asserts that Design Labs knew that it was contracting with a New York corporation when it was negotiating and executing contracts with Harvey, because Design Labs understood Harvey to be Arista's agent. Arista also insists that personal jurisdiction exists because Design Labs knew that the technology services it was to provide pursuant to the contract with Harvey were for the benefit of Arista, a New York corporation. This theory of jurisdiction, which is articulated for the first time in Arista's opposition papers, is generalized and glosses over the specific analysis of factors required by *Agency Rent A Car* and due process.

On the other hand, in uncontradicted papers submitted to this Court, Design Labs explains that the "contracts" to which Arista refers are actually a series of seven, separate, short-term contracts and a confidentiality agreement (*see* Affidavit of Kyle Fields, President of Design Labs, [hereinafter Fields Aff.] ¶¶ 6–11). Only two of the contracts included Arista as a party (the "Arista Agreements"), and those contracts were for the non-technical industrial design of a plastic case for the stand-alone device and for the design of an integrated circuit component called a "custom gate array" (*see* Fields Aff. ¶¶ 6–11). Design Labs completed performance on these contracts prior to January 1994 (*see* Fields Aff. ¶ 9).

Design Labs also describes the remaining five contracts in the series. All of these contracts were between Design Labs and Chambord (the "Chambord Agreements") (*see* Fields Aff. ¶¶ 6–11). The first two Chambord Agreements were dated June 17, 1993, and Design Labs completed the work under them within four weeks (*see* Fields Aff. ¶¶ 6–7). The third agreement was dated July 27, 1993, and Design Labs completed that work by December 1993 (*see* Fields Aff. ¶ 8). The fourth agreement was dated January 24, 1994, and provided for Design Labs to provide miscellaneous engineering support to Chambord through May 1994 for a monthly retainer (*see* Fields Aff. ¶ 10). Lastly, the fifth agreement, which was executed sometime in May 1994, called for Design Labs to provide consulting services to Chambord on an hourly basis depending on Design Labs' availability (*see* Fields Aff. ¶ 11).

Design Labs and Chambord also entered into a confidentiality agreement, dated May 27, 1993 (*see* Amended Complaint ¶ 39). The confidentiality agreement was to last for five years, but it was superceded by a second confidentiality agreement that was executed in January 1994. Viewing the facts in the light most favorable to the plaintiff, *see A.I. Trade Finance, Inc.*, 989 F.2d at 79–80, the Court will assume for the purposes of this motion that Arista was either a party to, or the third-party beneficiary of all seven of the contracts.

Nevertheless, the Court finds that Design Labs did not transact business in New York State within the meaning of CPLR section 302(a)(1). The two agreements signed by Arista were actually negotiated by Harvey and Fields in California, and Fields executed them in California (*see* Fields Aff., ¶¶ 7–9, Exs. C, E). The other five agreements were negotiated and executed by Fields and Harvey in California (*see* Fields Aff. ¶¶ 6, 8, 10, 11, Exs. A–G). *See id.* All seven contracts state that they were executed in California and are governed by California law (*see* Fields Aff. ¶¶ 6–11, Exs. A–G). Design Labs received payment for its work in California (*see* Fields Aff. ¶ 12). No representative of Design Labs visited Arista's offices in New York (*see* Fields Aff. ¶ 9).

In regard to communication between Design Labs and Arista, at most there were several telephone calls between Fields in California and an employee of Arista in New York, and Fields may have spoken to an Arista representative at the CES in Las Vegas (*see* Fields Aff. ¶ 9). All work performed under the contracts was performed in California (*see* Fields Aff. ¶ 12). However, Design Labs did send a prototype to Arista in New York (*see* Declaration of Steven Kayman, Attorney for Arista [hereinafter Kayman Decl.] ¶ 3, Exs. 1, 2).

In addition, Design Labs is a California corporation with its principal place of business in Sacramento, California (*see* Fields Aff. ¶ 1; Amended Complaint ¶ 6). Design Labs does not do business in the State of New York (*see* Fields Aff. ¶ 14). It maintains no offices, employees, or bank accounts in New York (*see* Fields Aff. ¶ 14). Design Labs does not advertise or solicit business in New York and does not own or lease real estate in New York (*see* Fields Aff. ¶ 14). At all times, Fields understood and believed Harvey to be a California resident and Chambord to be a California corporation (*see* Fields Aff. ¶ 4). *See National Telephone Director Consultants v. Bellsouth Advertising & Publishing Corp.,* 25 F.Supp.2d 192, 196 (S.D.N.Y.1998) (in finding that court did not have personal jurisdiction over defendant, court noted that defendant maintained no offices, employees, property, bank accounts, distributers, mailing addresses, post office boxes, local telephone numbers or registered agents in New York).

This Court finds that Design Labs did not transact business in New York State because all seven contracts were negotiated and signed in California, *cf., Pfeffer v. Mark,* 36 F.Supp.2d 556, 559 (E.D.N.Y. 1999) (finding that defendant transacted business in New York where contractual relationship was negotiated in New York restaurant and reduced to writing in New York law office); all seven contracts provided for the application of California law; the work under the contracts was performed in California; Fields never traveled to New York to have business discussions with Arista, *cf. Cantor Fitzgerald, L.P. v. Peaslee,* 88 F.3d 152 (2d Cir.1996) (noting that meetings held in New York following formation of contractual relationship may confer personal jurisdiction over defendant where meetings are essential to business relationship); and Design Labs was paid in California. *See Agency Rent A Car,* 98 F.3d at 29; *Unlimited Care,* 42 F.Supp.2d at 331 (finding that defendant did not transact business in New York where contract negotiated in Massachusetts and signed by defendant in Massachusetts; representative of defendant company never visited New York; contract provided for application of Massachusetts law; services were rendered in Massachusetts; defendant received payment in Massachusetts; and contract did not contemplate ongoing contractual relationship with plaintiff company in New York); *National Telephone,* 25 F.Supp.2d at 196 (concluding that defendant did not transact business in New York where contract drafted in Georgia; negotiations did not occur in New York; choice-of-law clause provided for application of Georgia law; contract signed by defendant in Georgia; defendant

did not visit plaintiff's New York office); *Worldwide Futgol,* 983 F.Supp. at 176–77.

The fact that Design Labs sent a prototype to Arista in New York does not compel a different result, because it is well settled that the consensual mailing of comparable items does not convey jurisdiction over a defendant under CPLR section 302(a)(1). *See Unlimited Care,* 42 F.Supp.2d at 331 (holding that defendant's mailing of payments to plaintiff in New York did not confer jurisdiction); *Worldwide Futgol,* 983 F.Supp. at 177 ("New York courts have held that conducting contractual negotiations by phone, fax or mail with a party in New York does not constitute the transaction of business within the state.").

Moreover, "[k]nowledge that a product may be destined for a particular forum is insufficient, in the context of this case, to sustain jurisdiction." *Paradise Products Corp. v. Allmark Equipment Co., Inc.,* 138 A.D.2d 470, 471, 526 N.Y.S.2d 119, 120–21 (2nd Dept.1988); *see SBR Realty Corp. v. Pave–Mark Corp.,* 175 A.D.2d 240, 241–42, 572 N.Y.S.2d 705, 707 (2nd Dept.1991). Similarly, Design Labs did not transact business in New York by virtue of its receiving a telephone call originated by New York employees of Arista. *See Unlimited Care,* 42 F.Supp.2d at 332 (defendant did not actively project itself into New York simply because it received telephone calls from plaintiff New York corporation); *Worldwide Futgol,* 983 F.Supp. at 177 (finding lack of personal jurisdiction where defendant's only contacts with New York were telephone and fax contact with New York plaintiff); *Continental Field Service Corp. v. ITEC Intern., Inc.,* 894 F.Supp. 151, 154 (S.D.N.Y.1995) (defendant's correspondence with New York plaintiff that was in response to plaintiff's inquiries did not indicate "purposeful availment of benefits and obligations of transacting business in New York").

Even if Design Labs' mailing of the prototype and Fields telephone calls with an Arista employee meant that Design Labs transacted business in New York under section 302(a)(1), such an exercise of jurisdiction does not comport with due process guarantees. *See Worldwide Futgol,* 983 F.Supp. at 177 (concluding that defendant's phone calls to New York plaintiff was not "the type of purposeful activity connected with New York that is constitutionally required to confer jurisdiction in New York"). Simply put, "telephone ... and mail between an out-of-state defendant and a New York plaintiff will not confer jurisdiction unless the defendant used the communications as a means of "projecting" themselves into local commerce." *National Telephone,* 25 F.Supp.2d at 196–97; *Snyder v. Madera Broadcasting, Inc.,* 872 F.Supp. 1191, 1194 (E.D.N.Y.1995). Here, the telephone calls from Arista to Design Labs, and Design Labs mailing the prototype to New York do not show that Design Labs has purposely projected itself into New York. *See Roper Starch Worldwide, Inc. v. Reymer & Assocs., Inc.,* 2 F.Supp.2d 470, 474–75 (S.D.N.Y.1998) (defendant's phone calls to New York to ensure fulfillment of contract and defendant's mailings and faxes to New York did not show that defendant purposely projected himself into New York such that his conduct should confer personal jurisdiction over him). It simply cannot be said that Design Labs' conduct and connections with New York are such that it could reasonably have anticipated being haled into court here. *See World–Wide Volkswagen v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Nor can it be said that Design Labs purposefully availed itself of the privilege of conducting activities here. *See Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *CutCo Indus., Inc. v. Naughton,* 806 F.2d 361, 365 (2d Cir.1986); *McKee Elec. Co. v. Rauland-Borg Corp.,* 20 N.Y.2d 377, 382, 283 N.Y.S.2d 34, 229 N.E.2d 604 (1967). Accordingly, the Court finds that Arista has failed to demonstrate a basis for asserting personal jurisdiction under section 302(a)(1).

### b) Personal Jurisdiction Under Section 302(a)(3)(ii)

Alternatively, Arista attempts to establish a prima facie case for personal jurisdiction under CPLR section 302(a)(3)(ii). This statute states that a defendant is subject to personal jurisdiction when the defendant:

[C]ommits a tortious act without the state causing injury to person or property within the state . . . if he:

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

CPLR § 302(a)(3)(ii); *see Domond v. Great American Recreation, Inc.,* 116 F.Supp.2d 368, 373 (E.D.N.Y.2000). In order to succeed under this theory, Arista must aver facts that, if credited, would establish (1) the commission of a tort outside of New York; (2) injury within the state; (3) Design Labs' reasonable expectation that its conduct would have consequences in New York; and (4) that Design Labs derives substantial revenue from interstate commerce. *See* CPLR § 302(a)(3)(ii); *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779, 785 (2d Cir.1999) (noting that plaintiff must aver facts that would suffice to establish, among other thing, commission of tort); *PI Inc. v. Quality Products, Inc.,* 907 F.Supp. 752, 760 (S.D.N.Y.1995) (holding that to satisfy New York's long-arm statute, complaint must frame cause of action in tort).

The Court finds that Arista has failed to allege the commission of a tort outside of New York State, because Arista has merely converted a breach of contract action into a tort claim in order to obtain jurisdiction. *See Bank Brussels Lambert,* 171 F.3d at 785; *PI Inc.,* 907 F.Supp. at 760. Here, Arista claims that Design Labs fraudulently concealed (1) the fact that it was working for ADLE at the same time that it was working for Arista and (2) the fact that it allegedly was giving Arista's intellectual property to ADLE (*see* Amended Complaint ¶ 79). Arista claims that it relied on Design Labs' silence and was injured because it continued to pay Design Labs for the work it thought Design Labs was performing, and because it continued to provide Design Labs with confidential information in the face of Design Labs' silence (*see* Amended Complaint ¶ 79). In essence, Arista contends that Design Labs concealed its breach of the contract with Arista, and that concealment misled Arista into not taking action with regard to the breach.

However, under New York law, "alleged concealment of a breach is insufficient to transform what would normally be a breach of contract action into one for fraud." *Reuben H. Donnelley Corp. v. Mark I Marketing Corp.,* 893 F.Supp. 285, 290 (S.D.N.Y.1995) (citing *MBW Advertising Network v. Century Business Credit Corp.,* 173 A.D.2d 306, 306–07, 569 N.Y.S.2d 682, 682 (1st Dept.1991)); *Compania Sud–Americana de Vapores, S.A. v. IBJ Schroder Bank & Trust Co.,* 785 F.Supp. 411, 422 (S.D.N.Y.1992) ("[F]ailing to disclose a breach of a promise does not transform a contract action into one for fraud."). Thus, Arista has failed to alleged a cause of action for fraud.

This conclusion is supported by the well-settled principle of New York law that "a party cannot maintain a fraud claim if the alleged fraud is merely the breach of a contract." *D.S. America (East), Inc. v. Chromagrafx Imaging Systems, Inc.,* 873 F.Supp. 786, 795 (E.D.N.Y.1995); *New York University v. Continental Insurance Co.,* 87 N.Y.2d 308, 319–20, 639 N.Y.S.2d 283, 662 N.E.2d 763 (1995) (holding that where fraud claim is duplicative of breach of contract claim, then fraud claim must be dismissed); *Caniglia v. Chicago Tribune–New York News Syndicate, Inc.,* 204 A.D.2d 233, 612 N.Y.S.2d 146, 147 (1st Dept.1994) ("[A] cause of action does not lie where . . . the only fraud alleged merely relates to the contracting party's alleged intent to breach a contractual obligation.");

*McKernin v. Fanny Farmer Candy Shops, Inc.,* 176 A.D.2d 233, 234, 574 N.Y.S.2d 58, 59 (2d Dept.1991) (holding that where a fraud claim "is premised upon an alleged breach of contractual duties and the supporting allegations do not concern representations which are collateral or extraneous to the terms of the parties' agreement, a cause of action sounding in fraud does not lie").

Rather, in order to allege a claim of fraud arising out of a contractual relationship, a plaintiff must not only allege the basic elements of fraud, but also either "(1) a legal duty separate and apart from the contractual duty to perform; (2) a fraudulent representation collateral or extraneous to the contract; or (3) special damages proximately caused by the fraudulent representation that are not recoverable under the contract measure of damages." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.* 98 F.3d 13, 20 (2d Cir. 1996); *DS Capital, Inc. v. Carlisle Sports Emporium, Inc.,* 116 F.Supp.2d 376, 378 (E.D.N.Y.2000); *Pacs Indus. v. Cutler–Hammer, Inc.,* 103 F.Supp.2d 570, 571–72 (E.D.N.Y.).

Even reading the complaint in the light most favorable to Arista, the Court cannot discern any legal duty to Arista that Design Labs may have violated that is independent of their duties of good faith and fair dealing implied in the contract. *See New York University,* 87 N.Y.2d at 319–20, 639 N.Y.S.2d 283, 662 N.E.2d 763 ("Plaintiff's claim amounts to nothing more than a claim based on the alleged breach of the implied covenant of good faith and fair dealing, and the use of familiar tort language in the pleading does not change the cause of action to a tort claim in the absence of an underlying tort duty sufficient to support a claim for punitive damages."). In addition, Arista does not claim that Design Labs fraudulently concealed information collateral or extraneous to the contract. Rather, Arista contends that Design Labs failed to disclose its breach of the contract. Lastly, Arista has not al-

leged the existence of any special damages that would not be recoverable under a contract theory.

Thus, Arista's tort claim is clearly duplicative of its cause of action for breach of contract. Because Arista has not adequately alleged a tort, it failed to satisfy all of the requirements of the long-arm statute. *Bank Brussels Lambert,* 171 F.3d at 785; *PI,* 907 F.Supp. at 760. Accordingly, CPLR section 302(a)(3)(ii) does not support the exercise of personal jurisdiction over Design Labs.

**C. Motion to Dismiss by ADLE for Lack of Subject Matter Jurisdiction**

 ADLE moves to dismiss Count V of the Amended Complaint, in which Arista seeks a declaratory judgment that ADLE's U.S. Patent No. 5,333,091 (the "091 Patent") is invalid. Subject matter jurisdiction over a claim for declaratory judgment of patent invalidity requires an "actual controversy" which is "of sufficient immediacy and reality" to warrant judicial action. *EMC Corp. v. Norand Corp.,* 89 F.3d 807, 810 (Fed.Cir.1996). Where a patent owner has granted a plaintiff a covenant not to sue for present activity that would place the plaintiff at risk of infringement liability, dismissal is required for lack of an actual controversy. *See Super Sack Mfg. Corp. v. Chase Packaging Corp.,* 57 F.3d 1054, 1058 (Fed.Cir.1995). This is true even where the covenant does not cover future products, because a present controversy is lacking. *See Amana Refrigeration, Inc. v. Quadlux, Inc.,* 172 F.3d 852, 855 (Fed.Cir.1999).

 ADLE submitted to the Court an affidavit of Bernard J. Lacomis, president of ADLE, in which Mr. Lacomis "provides to Arista a covenant not to sue for infringement of the '091 patent" (*see* Reply Affidavit of Bernard J. Lacomis and Expanded Covenant Not to Sue [hereinafter Expanded Covenant], pp. 1–2). The only two limitations on the covenant are as follows: "(a) The Covenant is limited to

the '091 patent, and does not constitute an implied covenant under any other patent[; and] (b) [t]he Covenant is conditioned upon the withdrawal or dismissal of Arista's claim for a declaratory judgment regarding the validity of the '091 patent." The Court finds that the Expanded Covenant is unrestricted and constitutes a promise by ADLE not to sue Arista for any past, present, or future infringements of the '091 patent. This interpretation is supported by statements made by ADLE's counsel at oral argument, where he stated on the record that the covenant was unrestricted and would apply to any past, present, or future infringements by Arista.

Because ADLE has provided Arista with an unlimited and unrestricted covenant not to sue, this Court finds that no controversy survives the covenant. *See Super Sack,* 57 F.3d at 1058. Thus, the Court lacks subject matter jurisdiction over Count V of the Amended Complaint, and that Count is dismissed. *See* Fed.R.Civ.P. 12(h)(3); *EMC Corp.,* 89 F.3d at 810.

### D. The Plaintiff's Motion to file a Second Amended Complaint

Rule 15(a) of the Federal Rules of Civil Procedure states, in pertinent part, that "a party may amend … [its] pleading only by leave of court or by written consent of the adverse party." Fed.R.Civ.P. 15(a); *see also Jones v. New York State Division of Military and Naval Affairs,* 166 F.3d 45, 49 (2d Cir.1999). However, "leave [to amend a pleading] shall be freely given when justice so requires." Fed.R.Civ.P. 15(a); *see also Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Jones,* 166 F.3d at 49; *Local 802 v. Parker Meridien Hotel,* 145 F.3d 85, 89 (2d Cir.1998); *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129 (2d Cir.1993); *Ronzani v. Sanofi S.A.,* 899 F.2d 195, 198 (2d Cir. 1990).

While amendment is to be freely granted, if an amendment would be futile, "it is not an abuse of discretion to deny leave to amend" to the moving party.

*Ruffolo,* 987 F.2d at 131. Nor is the district court obligated to grant leave if the proposed amendment is patently without merit. *See Health–Chem Corp. v. Baker,* 915 F.2d 805, 810 (2d Cir.1990). It is within this framework that the Court addresses Arista's cross-motion file a Second Amended Complaint.

Arista seeks leave of the Court to file a Second Amended Complaint which is not different from the amended Complaint in any meaningful way. With respect to the material portions of Count II, the Second Amended Complaint is as vague as the Amended Complaint. Arista's changes are perfunctory and cosmetic and fail to allege any additional statements by Iggulden that would constitute an affirmative misrepresentation. Accordingly, the Second Amended Complaint fails to plead the dismissed fraud claim with the particularity required by Rule 9(b), and the changes advanced are futile.

In regard to Counts III and IV, the Second Amended Complaint does not allege any additional facts that would support a finding that Design Labs has transacted business in New York State within the meaning of CPLR section 302(a)(1). In addition, Arista's tort claim in the Second Amended Complaint remains duplicative of the breach of contract claim. Because the Second Amended Complaint does not cure any of the deficiencies in the Amended Complaint, the Court finds that it is futile and denies leave to file it.

### III. CONCLUSION

Having reviewed the parties' submissions and given them an opportunity for oral argument it is hereby

**ORDERED,** that the motion, by defendants Iggulden and IMA, seeking dismissal of the fraudulent misrepresentation claim in Count II of the Amended Complaint is **DENIED** to the extent that it is based on the August 18, 1993, statement by Iggulden, and **GRANTED** to the extent

that it is based on any other statements or assurances by Iggulden; and it is further

**ORDERED,** that the motion to dismiss Counts III and IV of the Amended Complaint by defendant Design Labs is **GRANTED;** and it is further

**ORDERED,** that the motion to dismiss Count V of the Amended Complaint by defendant ADLE is **GRANTED;** and it is further

**ORDERED,** that the plaintiff's motion for leave to file a Second Amended Complaint is **DENIED;** and it is further

**ORDERED,** that third-party plaintiff shall file with the Court a statement of intent in regard to the third-party action within thirty (30) days of the date of this Order; and it is further

**ORDERED,** that the Clerk of the Court is to amend the caption to read as follows:

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ARISTA TECHNOLOGIES, INC.,

against

JERRY IGGULDEN, and INVENTION MANAGEMENT ASSOCIATES, INC., Defendants.

ARTHUR D. LITTLE ENTERPRISES, INC., Third–Party Plaintiff,

against

MICHAEL HARVEY and CHAMBORD TECHNOLOGIES, INC., Third–Party Defendants.

**SO ORDERED.**